UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:21-cv-00303-FDW

| | |
|---|---|
| TAYLOR PAIGE COTE, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Claimant Taylor Paige Cote's Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 12, 13), filed April 7, 2022; Defendant Acting Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 14, 15), filed May 16, 2022; and Claimant's Response to Defendant's Motion for Summary Judgment (Doc. No. 19), filed July 7, 2022. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income.

The motions are fully briefed and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I. BACKGROUND**

On March 9, 2020, Claimant filed both a Title II application for a period of disability and disability insurance benefits, (Tr. 18), and a Title XVI application for Supplemental Security Income ("SSI"). Id. Both applications alleged disability beginning August 1, 2019. Id. After her

1

applications were denied initially and upon reconsideration, Claimant requested a hearing by an Administrative Law Judge ("ALJ"). The ALJ held a hearing on March 2, 2021, after which the ALJ issued an unfavorable decision on March 17, 2021, finding Claimant not disabled under the Social Security Act. (Tr. 18–29).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found at step one Claimant has not engaged in substantial gainful activity since August 1, 2019. (Tr. 21). At step two, the ALJ found Claimant to have the following severe impairments: "depressive disorder, posttraumatic stress disorder (PTSD), and dissociative identity disorder (DID)." Id. Assessing step three, the ALJ found Claimant had "moderate limitation[s]" in "understanding, remembering, or applying information;" "interacting with others;" and "concentrating, persisting, or maintaining pace." (Tr. 22). The ALJ also found Claimant had "mild limitation" in "adapting or managing oneself." Id. The ALJ determined that none of Claimant's impairments, nor any combination thereof, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 21). Before proceeding to step four, the ALJ found Claimant

> ha[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid concentrated exposure to fumes and other respiratory irritants. The claimant can perform simple, routine, repetitive work, tolerate occasional contact with coworkers, supervisors, and the public, and limited to reasoning 1, 2, and 3 jobs.

(Tr. 23). The ALJ found for step four that Claimant was unable to perform any past relevant work. (Tr. 27).

Evaluating step five, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and

residual functional capacity ("RFC"). (Tr. 28). The VE testified that, given those factors, the individual would be able to perform the requirements of representative occupations including: "hand washer (DOT 361.687-030, SVP 2, reasoning level 2), hand packager (DOT 559.687-074, SVP 2, reasoning level 2), and sorter (DOT 521.687-086, SVP 2, reasoning level 2)." Id. The VE testified that each occupation existed in significant numbers in the national economy, including 420,000 jobs, 392,000 jobs, and 434,000 jobs respectively. (Tr. 28–29). Thus, the ALJ concluded Claimant was not disabled as defined by the Social Security Act from August 1, 2019, through the ALJ's decision. (Tr. 29).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1–6). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the

Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Claimant identifies two assignments of error on appeal: (1) the Acting Commissioner Berryhill lacked statutory authority under the Federal Vacancy Reform Act ("FVRA") to ratify the appointment of Social Security Administration ("SSA") ALJs in 2018; and (2) the ALJ failed to articulate how he accounted for Claimant's moderate limitations in concentration, persistence, or pace in the RFC.[1] However, for the reasons discussed below, the Court disagrees and finds both assignments of error without merit.

**A. Constitutionality of Ms. Berryhill's Appointment and Ratification**

Claimant argues that then-Acting Commissioner Berryhill was not properly acting under the FVRA when she ratified the appointment of the ALJ in this case because her tenure had expired, such that the ratification of the ALJ was ineffective. Claimant urges the Court to rely on

---

[1] During the discussion of the FVRA, Claimant also challenges, pursuant to the Appointment Clause, Acting Commissioner Berryhill's ratification of the appointment of the ALJ in this case. However, in light of the Fourth Circuit's recent ruling in Brooks v. Kijakazi, and for the reasons cited therein, this argument fails. Brooks v. Kijakazi, No. 21-2048, at *12–13 (4th Cir. Feb. 22, 2023) (finding that the ALJ's second denial of benefits in 2019 was lawful since she was "properly appointed to her position by virtue of the Commissioner's 2018 ratification," but remanding because the ALJ's initial denial in 2018 was flawed and Lucia v. SEC, 138 S.Ct. 2044 (2018), requires a new hearing to cure the initial constitutional error). Here, the appointment of the ALJ was properly ratified when he denied Claimant's disability benefits claim in 2021. Brooks, No. 21-2048, at *12–13; see also Taylor v. Kijakazi, No. 1:21CV648, 2022 WL 4668273, at *12 (M.D.N.C. Aug. 2, 2022).

Brian T.D. v. Kijakazi, 580 F.Supp.3d 615 (D. Minn. Jan. 20, 2022), *appeal filed*, No. 22-1601 (8th Cir. Mar. 22, 2022), in which a district court concluded Ms. Berryhill could not serve as Acting Commissioner during the pendency of Mr. Saul's nomination because the initial 210-day acting service period lapsed before the submission of his nomination in April 2018. Thus, the district court found Ms. Berryhill could not lawfully ratify and approve the appointments of SSA ALJs as her own.

However, the Court disagrees with the Minnesota district court's interpretation of the FVRA, instead finding persuasive the interpretation and substantial analysis of other judges from this Court and Circuit.[2] The Court adopts and incorporates the reasoning of a fellow judge in this District Court addressing the same constitutional challenge to Ms. Berryhill's appointment as Acting Commissioner and her ratification of the SSA ALJs as her own. Williams v. Kijakazi, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022) (unpublished) (finding the plain text of the FVRA, the view of the Executive Branch, and the view of the Legislative Branch all agree "§ 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired").

---

[2] See, e.g., Williams v. Kijakazi, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022); Taylor v. Kijakazi, No. 1:21-CV-648, 2022 WL 4668273, at *9, (M.D.N.C. Aug. 2, 2022); Black v. Kijakazi, No. 1:21-CV-322, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022); Edwards v. Comm'r of Social Sec., No. 1:21-CV-00134, 2022 WL 3352298, at *4 (W.D.N.C); Call v. Comm'r of Social Sec., No. 5:21-CV-00145, 2023 WL 1093670, at *5 (W.D.N.C. Jan. 10, 2023); Stanley v. Kijakazi, No. 1:22-CV-43, 2023 WL 318581, at *12 (M.D.N.C. Jan. 29, 2023); Allison v. Kijakazi, No. 1:21-CV-890, 2023 WL 143201, at *12 (M.D.N.C. Jan. 10, 2023); Huntsinger v. Comm'r of Social Sec., No. 1:21-CV-00267, 2023 WL 1456187, at *4 (W.D.N.C. Jan. 4, 2023); Brooks v. Kijakazi, No. 1:21-CV-609, 2022 WL 2834345, at *16 (M.D.N.C. July 20, 2022); Donta J. v. Saul, No. 2:20-CV-131, 2021 WL 3705145, at *7 (E.D. Va. Apr. 2, 2021), *adopted by* 2021 WL 2711467 (E.D. Va. July 1, 2021); Taylor v. Saul, No. 1:16-CV-00044, 2019 WL 1055098, at *4 (W.D. Va. Aug. 15, 2019).

The Court is persuaded that Claimant's argument is without merit. Therefore, the final decision of the ALJ is not constitutionally defective.

**B. The ALJ's RFC Assessment**

Claimant next argues the ALJ failed to adequately explain the RFC assessment and the RFC assessment is not supported by the evidence. The ALJ determines the individual's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Moreover, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion." Monroe, 826 F.3d at 189 (quoting Mascio, 780 F.3d at 636).

Relying on Mascio, Claimant argues the ALJ committed reversible error by not adequately accounting for the moderate limitation in Claimant's ability to concentrate, persist, and maintain pace in the RFC. Specifically, Claimant argues the ALJ's analysis "does not address [Claimant's] ability to stay on task or perform at a consistent pace." (Doc. 13, p. 10). In response, Defendant argues the ALJ properly accounted for Claimant's limitations in concentration, persistence, and pace, particularly considering the Fourth Circuit's decision in Shinaberry v. Saul, 952 F.3d 113 (4th Cir. 2020).

In Mascio, the Fourth Circuit held that a hypothetical tendered to a VE was legally insufficient where the ALJ failed to explain why the plaintiff's moderate mental limitation in concentration, persistence, and pace did not translate into the RFC. 780 F.3d at 638. The court reasoned that an ALJ cannot sufficiently account for a claimant's limitation in concentration, persistence, and pace by simply limiting the hypothetical to simple or unskilled work. Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to *stay*

*on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence, or pace." Minor v. Berryhill, No. 9:17-1087, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018) (emphasis in original). The Mascio court ultimately remanded because the ALJ provided no explanation at all regarding whether the claimant's limitation affected her RFC. Mascio, 780 F.3d at 638.

More recently, in Shinaberry, the Fourth Circuit held that a limitation to "simple, routine, repetitive tasks" sufficiently accounted for a moderate limitation in concentration, persistence, and pace where the ALJ "issued a comprehensive decision denying [Claimant's] claim." Shinaberry, 952 F.3d at 119. The court explained that Mascio did not enact a *per se* rule, but instead allowed an ALJ to explain why a restriction greater than simple, routine, repetitive tasks was not warranted. Id. If an ALJ adequately explains why the objective medical evidence supports a limitation to "simple, routine, repetitive tasks," the ALJ adequately accounts for a claimant's limitations in concentration, persistence, and pace. See id. at 121–22.

Here, the ALJ noted Claimant, "[w]ith regard to concentrating, persisting or maintaining pace, [] has a moderate limitation." (Tr. 22). The ALJ explains this in the RFC by referencing Claimant's ability to "engage in an array of daily activities, such as preparing meals, performing household chores, paying bills, driving, and shopping." (Tr. 26). While the finding of a moderate limitation by the ALJ was a greater severity than that found by two doctors, the ALJ thoroughly explained his reasoning for this upward departure by detailing the aspects of each medical opinion that were both persuasive and unpersuasive. (Tr. 26–27). The ALJ ultimately concluded that, based on the record, Claimant "did not consistently exhibit significant cognitive, memory, or concentration deficits." Id. Unlike in this case, the ALJ in Mascio "ignore[ed] (without

9

explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" when he conducted the function-by-function analysis. 780 F.3d at 633.

The ALJ considered Claimant's psychological evaluation with Dr. Karen Marcus and summarized Dr. Marcus's findings, stating in the ALJ's report:

> During the encounter, the claimant was friendly and appropriate, with adequate eye contact, normal speech, and coherent though processes. The claimant's thought content was appropriate, as was her judgment…Dr. Marcus reported that the claimant did not seem to have any problems understanding instructions and there were no indications that she would have any difficulties retaining and following instructions. Given her history, problems and presentation, Dr. Marcus opined that the claimant may have mild problems with attention/concentration, but she exhibited adequate resources to sustain attention to perform simple repetitive tasks.

(Tr. 25). The ALJ's opinion is supported by many of Claimant's medical records, which consistently noted progress and increased management of symptoms related to Claimant's underlying impairments. Specifically, included in the ALJ's analysis were progress notes from Claimant's medication management provider that documented Claimant "denied depression, anxiety, mood swings, or personality changes, and [Claimant] indicated that she was attending a DID group and enjoying this." (Tr. 26). While Claimant points to the opinion of Ms. Ringle, Claimant's therapist, as evidence of the need for limitations in concentration, persistence, or pace, the ALJ determined the opinion to be "unpersuasive, as it [was] inconsistent with treatment notes from other providers." (Tr. 27).

The ALJ also considered Claimant's educational history, including school accommodations, and medication use, as well as Claimant's statements that "unless she was experiencing depression, she was able to complete tasks in a timely manner, and she reported varying concentration, depending on her anxiety level." (Tr. 24–25). The ALJ explained that "while no overt memory or attention deficits were consistently noted in the record, the chronicity

10

and occasional flares of the claimant's symptoms would likely limit her to simple, routine, repetitive tasks." (Tr. 27). The ALJ went even further to find, "considering the claimant's history of trauma and the alters she experiences in association with DID…that the claimant would reasonably be limited to no more than occasional interaction with others." Id.

Thus, the Court disagrees with Claimant because the ALJ both identifies evidence that supports the conclusion and builds an accurate and logical bridge from that evidence to the conclusion. As in Shinaberry, the ALJ adequately addressed the Claimant's ability to concentrate, persist, or maintain pace in the RFC and explained why a restriction to simple, routine, repetitive tasks sufficiently accounts for Claimant's moderate limitations in those areas. Substantial evidence therefore supports the ALJ's decision.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that for the reasons above, Claimant's Motion for Summary Judgment, (Doc. No. 12), is DENIED; the Commissioner's Motion for Summary Judgment, (Doc. No. 14), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: February 28, 2023

Frank D. Whitney
United States District Judge